UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JAMES C. COLLINS, trustee,

                Appellant,

     -against-                                3:12-CV-0589 (LEK)

JEANNE ANGELL,

                Appellee.

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Appellant James Collins ("Collins"), as trustee in the Chapter 7 bankruptcy below, appeals from a decision of the U.S. Bankruptcy Court that Appellee Jeanne Angell ("Angell") had perfected a security interest in sixteen dairy cows prior to the ninety-day preference period of the bankruptcy action below and was therefore entitled to the proceeds from auction of the cows.  See Dkt. Nos. 1-2; 2-21; 4.  For the following reasons, the Court vacates the decision of the Bankruptcy Court and remands the case for additional factfinding.

**II.    BACKGROUND**

    **A. Factual History**

In 2006, Angell sold fifty-eight cows to the debtors below.  Dkt. No. 2-16 ¶ 20.[1]  Angell delivered the Bill of Sale for the cows to the debtors in 2008 and received in exchange a Security Agreement dated August 10, 2008, granting her a security interest in the fifty-eight cows while the

---

[1] Angell agrees with all material facts as stated in Docket Number 2-16 except for paragraph nine.  Dkt. No. 2-18 ¶ 1.

debtors paid the purchase price over time.  Id. ¶¶ 20-21; see Dkt. Nos. 2-9; 2-13.[2]  Three days later, Angell filed a Financing Statement naming the debtors below as debtors, herself as the secured party, and the fifty-eight cows as collateral.  Dkt. No. 2-16 ¶ 22; see Dkt. No. 2-10.[3]  Each of these documents listed a name and ear tag number for each of the fifty-eight cows.  See Dkt. Nos. 2-9; 2-10; 2-13.  Angell knew that cows lose ear tags over time, but did not ascertain whether the ear tag numbers listed in the 2008 Security Agreement and her subsequent Financing Statement corresponded with ear tags then on the cows to be secured.  Dkt. No. 2-16 ¶¶ 23-24.  When Angell sold the cows to the debtors in 2006, however, she also delivered to the debtors an identifying registration certificate for each cow issued by Holstein Association USA, Inc., which includes among other information a sketch of the cow.  Id. ¶¶ 15-16; see, e.g., Dkt. No. 2-14.  The registration certificates were not mentioned in the Security Agreement or Financing Statement.  See Dkt. Nos. 2-9; 2-10.

On September 18, 2008, the debtors auctioned off eighty of the ninety cows in their possession.  Dkt. No. 2-16 ¶¶ 3-4.  Angell eventually received $27,764.20 from this auction, representing the net proceeds of the sale of twenty-two cows, which the debtors' auction agent identified as Angell's by referencing the Holstein Association registration certificates.  Id. ¶¶ 5, 19.  Meanwhile, the debtors had filed the Chapter 7 bankruptcy action below on November 12, 2008.  Id. ¶ 1.  Angell is a creditor in that action and seeks to recover the unpaid balance of the purchase price of the fifty-eight cows she sold to the debtors in 2006.  Id. ¶¶ 6-7.  In asserting her claim, Angell

---

[2] A 2006 Security Agreement gave Angell a security interest in fourteen of the same fifty-eight cows.  Dkt. No. 2-12.

[3] Angell had filed a similar Financing Statement in 2006 naming as collateral the fourteen cows listed in the parties' 2006 Security Agreement.  Dkt. No. 2-12.

relies on the 2008 Security Agreement and Financing Statement. Id. ¶ 10.

Angell has conceded that two of the twenty-two cows for which she was paid were not subject to the 2008 Security Agreement. Id. ¶ 12. Four of the remaining twenty cows for which Angell was paid bore ear tags that matched the numbers listed in the 2008 Security Agreement and Financing Statement. Id. ¶ 13. Collins has conceded that Angell had a perfected security interest in those four cows. Dkt. No. 4 at 3 n.3. Whether Angell also had a perfected security interest in the remaining sixteen cows, six of which bore ear tags with numbers that did not match numbers listed in the 2008 Security Agreement and Financing Statement, and the other ten of which bore no ear tags at all, is the source of the present dispute.

### B. Decision Below

The Honorable Diane Davis, U.S. Bankruptcy Judge, held that Angell did have a perfected security interest in the disputed sixteen cows. Dkt. No. 1-2 at 11. First, looking to the New York version of the Uniform Commercial Code ("UCC"), Judge Davis determined that collateral need only be reasonably identified in a financing statement such that a creditor or third party would be put on inquiry notice that a person may have a security interest in the claimed collateral. Id. at 7-8 (citing N.Y. U.C.C. LAW §§ 9-108, 9-310(a), 9-502(a)(3), 9-504; 95 N.Y. JUR. *Secured Transactions* §§ 192, 212 (2011)). Finding no New York authority addressing the sufficiency of a description of cows as collateral, and because every state has enacted the relevant portion of the UCC, Judge Davis drew on cases from Vermont and Wisconsin to hold that a list of cows with ear tag numbers is a sufficient description even if the listed ear tag numbers are incorrect. Id. at 8-9; see, e.g., United States v. Fullpail Cattle Sales, Inc., 640 F. Supp. 976, 981 (E.D. Wis. 1986) ("Cattle described by erroneous ear tag number have been held to be 'reasonably identified' in a security agreement

3

description.").

Next, Judge Davis observed that a financing statement containing a description of collateral sufficient to give notice of a possible security interest in a debtor's property imposes on third parties a duty to make a reasonable inquiry as to the specific property covered, thus charging third parties with knowledge of whatever facts a reasonable inquiry would reveal. Id. at 10; see Richard C. Tinney, Annotation, *Sufficiency of Description of Collateral in Financing Statement Under UCC § 9-110 and 9-402*, 100 A.L.R.3d 10 § 2[a] (2013); see also Allis-Chalmers Credit Corp. v. Bank of Utica, 441 N.Y.S.2d 852, 853-54 (Sup. Ct. 1981) ("The purpose of notice filing is to make the general public aware of a prior interest in collateral so that proper inquiry can be made. It is intended to alert a prospective lender that there may be a conflicting security interest and give him the opportunity to investigate further. The financing statement is merely a notice that a security interest may exist." (citations omitted)). Crediting Angell's assertion that it is customary in the dairy industry to rely on registration certificates to identify particular cows, Judge Davis found industry customs relevant to the sufficiency of notice provided by the 2008 Security Agreement and Financing Statement and therefore held that Collins, with reasonable inquiry to Angell and the debtors, "would have been able to readily and easily ascertain which cows were covered by [the] security interest." Dkt. No. 1-2 at 11; see id. at 6, 9-10. Collins appeals that decision.

### III. LEGAL STANDARD

On appeal, a district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. County of Clinton v. Warehouse at Van Buren St., Inc., No. 12-CV-1636, 2013 WL 2145656, at *1 (N.D.N.Y. May 15, 2013) (citing R2 Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.), 691 F.3d 476, 483 (2d Cir. 2012)). "A finding is

'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).  Following review, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  FED. R. BANKR. P. 8013.

IV.   DISCUSSION

Collins advances two general grounds for reversal of Judge Davis's decision.  First, he argues that because the ear tag numbers Angell listed in the 2008 Security Agreement and Financing Statement ultimately did not match ear tags on the sixteen cows in question, the documents either did not cover those cows or were misleading.  See Dkt. No. 4 at 9-14; see also Dkt. No. 7 at 1-3. Second, he argues that Angell's evidence regarding the industry custom of identifying cattle by registration certificates was legally insufficient.  See Dkt. No. 4 at 7-9; see also Dkt. No. 7 at 4-6.

Collins's first ground is unavailing.  Ear tags fall off of cows over time; thus, any utility they have for identification purposes is inherently temporary at best.[4]  See Dkt. No. 2-19 ¶ 23.  To adopt Collins's position that a security agreement that lists ear tag numbers secures only cows bearing ear tags with those numbers, and no others, would therefore impose a duty on a secured party to be constantly vigilant of the ear tags of collateral cattle not even in that party's possession.  Similarly, it would be unreasonable for a potential searcher to rely solely on ear tag numbers listed alongside the names of 16 cows in a financial statement.  Cf. Fullpail Cattle, 640 F. Supp. at 981.  The Court

---

[4] Ear tags on cattle are therefore unlike, for example, the serial numbers on equipment that were at issue in John Deere Co., Inc. v. Richards, 519 N.Y.S.2d 450 (Sup. Ct. 1987).  Moreover, cattle are far less fungible than equipment and can be identified by a number of alternative methods, including breed, lot number, brand, unique coat patterns, or registration certificate.  See Dkt. No. 1-2 at 10.

therefore will not reverse on this basis.

Collins's second ground, however, has some traction. An industry custom, or trade usage, may supplement or qualify the terms of an agreement. N.Y. U.C.C. LAW § 1-205(3). "Whether a usage exists is a question of fact, to be determined by the trier of fact." SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC, 467 F.3d 107, 134 (2d Cir. 2006); see N.Y. U.C.C. LAW § 1-205(2). Here, the only evidence of industry custom came from an affidavit filed by Angell's attorney. See Dkt. Nos. 4 at 8; 2-17. The affidavit does not comply with Federal Rule of Procedure 56(c)(4), however, because it does not establish that it is made on personal knowledge or that Angell's attorney is competent to testify on the matters stated. See FED. R. BANKR. P. 7056 (adopting FED. R. CIV. P. 56). Because no other evidence supports Judge Davis's finding regarding the existence and scope of an industry custom of identifying dairy cattle using registration certificates, that finding was clearly erroneous. See, e.g., Canizzo v. Farrell Lines, Inc., 579 F.2d 682, 686 (2d Cir. 1978) ("Where no substantial evidence supports a factual determination, it is clearly erroneous, and properly set aside."). The Court therefore vacates Judge Davis's decision and remands this case to the Bankruptcy Court for additional factfinding regarding the existence and scope of the alleged industry custom and for any other proceedings that may be proper.

**V.   CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the February 29, 2012, decision of the Bankruptcy Court is **VACATED** and the case is **REMANDED** for additional factfinding; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:       June 26, 2013
             Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge